We thank counsel in this last case for their argument. We've got the matter under advisement. Mr. Conklin. Yes, good morning, Your Honors. And may it please the Court, I am Stan Conklin, and I am here today on behalf of Mr. Roman Ildefonso Candelario. And if I could, I would request five minutes for rebuttal. You can, but we'll hold you then to the ten minutes. That's a long rebuttal, but if you want five, you've got five. Thank you, Your Honor. And that's for your opening. Now, a crime involving moral turpitude needs to involve reprehensible conduct. Before you even get there, let me ask a question about our standard of review, okay? We're told that our standard of review is de novo, but informed by deference required by Chevron. How can that be? I just confess, I have a hard time getting my head around that. How can something be de novo and at the same time be thoroughly deferential under Chevron? I don't think a Chevron level of deference would be appropriate here. And that is because this is an unpublished single board member opinion. It's not a precedential opinion, so it's entitled to lesser deference. And then I think really no deference would be owed because I think the decision is wrong as a matter of law. I think that the decision right on this case, matter of curado, doesn't apply to this case. So we don't have to come to grips with that framing of the standard of review because you're saying with a single member board decision, it's not entitled to any Chevron deference anyway. That's correct, Your Honor. Okay. You've argued to the extent there's any interpretation of the requirements, the elements of the state law at issue here, that would involve de novo review. But there's really no dispute about that issue, is there? Neither the IJ nor BIA suggested that there is some element of fraud that's required. They recognize there's not. I think what they failed to do was to identify the minimum conduct. It's kind of unclear because they relied on the matter of curado delgado, a fraud-related case, to classify this particular offense as a crime involving moral turpitude. So I do think there's legal error there. I think the main problem is that they didn't identify under state law. There was no engagement with state law, with jury instructions, or with the cases we cited, identifying what the minimum conduct would be under the statute. And I think that's the critical question this case asks. What is the minimum actus reus? What is the minimum conduct? And does that meet the definition that's been set forth over time as an offense involving moral turpitude? If we're simply missing an explanation as opposed to having an analysis to review that is wrong as a matter of law, then should we be remanding for the BIA to look again at the question of whether this statute satisfies the crime of moral turpitude standard? I don't think remand for further consideration of the CNT issue is necessary because I think existing case law answers the question. I think existing case law establishes that there must be something beyond just the impairment of the government function. I think the BIA's own case law says that, and I think other circuits' case law says that. It appears the government's sole argument for remand is its reference to the standard that's articulated by the BIA in Lopez Mesa, which is slightly different than the way it's been articulated in a host of other BIA decisions. How do you reconcile the Lopez Mesa articulation of what would be sufficient for a crime of moral turpitude? Which case is the Lopez Mesa decision? That's the decision that talks about where one is driving with a suspended license. That alone wouldn't be sufficient for an aggravated factor. But driving while intoxicated, again, alone wouldn't be. But those two things combined in the aggravated offense of aggravated driving under the influence would meet the standard, as articulated, of building to such a heightened deviance from accepted moral standards as to reach a level of conduct deemed morally turpitudinous. And so that's another case that relies on the aggravating factor analysis, something beyond mere interference with an official's duty. So I think Lopez Mesa also then would support the finding that this is not a crime involving moral turpitude. Isn't the problem, though, with the phrase moral turpitude? It's a 19th century expression, as I understand it. It must have had a meaning at the time. In the 19th century, a judge would have told a jury, instructing on reasonable doubt, to be morally certain of the verdict they returned. Well, that had a meaning in the 19th century, which doesn't fit with what we think it would mean today. So to make a remand, if that were the case, useful, how does a court go about deciding what moral turpitude is? We look back to 19th century sources. Is there a common understanding to your mind today of what someone would mean by the expression? I think that the—well, I don't think anybody would use that term in their day-to-day course activities, but I think it just becomes— They would use it if it was the week. But I do think we now have a settled definition, which is a reprehensible act combined with some form of scientific. And what we're missing in this case is the reprehensible act, because any act satisfies the statute. When we just look to the terms, I don't think we needed to get to the case law here, because I think the plain language of the statute establishes that it's broader than the BIA's own definition of crime involving moral turpitude. But physical interference includes walking and talking to somebody. As we can show by the case law, sitting in a wheelchair, conducting a political protest, I think those acts in our nation, at least when I went to school, in our history books, we sometimes teach examples of public protests that did block traffic as examples of positive, progressive things for the country. So I think under even any—for reprehensible and base and BIA, for those terms to have any meaning, to not just be buzzwords, then this statute cannot be a crime involving moral turpitude, because it encompasses too broad of conduct. So why shouldn't it be remanded? I mean, the government seems to be saying from the jump, look, we'll be asking Ms. Phillips about this, but the briefing is full of statements about, hey, send it back. Maybe they got it wrong. Give them a chance to look at this and approach it with a better understanding of the statute. Why is that wrong? Well, we've been advancing the same argument since the IJ level, and the IJ considered it twice, the BIA considered it, and the agency found our arguments unpersuasive. Assume you're right, that they got it wrong. The government doesn't want to say the words they got it wrong, but they say remand it, send it back. Let me back up and ask this. What is the order you're seeking from this court? What we're seeking is clarification that any act that impedes a government function does not necessarily involve moral turpitude. Okay, and we said that's right. Then what? We send it back? Then it would be sent back so we would have an opportunity to proceed forward on our application for cancellation of removal. That's going to require an evidentiary hearing where we address the factual issues in the case, the discretionary issues, the 10 years issues, the moral character, the hardship issue, being the primary factor that's often addressed at those evidentiary hearings. So you're acknowledging that there are steps, and you've said it in your reply brief, there are steps that would have to follow. It has to be remanded. You just want it remanded with us making a ruling of law and not sending it back to them for them to think about it and make a ruling. Is that it? That's correct, Your Honor. We're seeking ruling from this court on the CIMT issue because we want to be sure, one way or the other, that we're either going to be able to proceed forward on our application or not. I'd say one reason we don't want to have this case remanded without resolution of that legal issue is because we don't want to be back here again next year. Another reason is that I think one of the problems we had in presenting this case was getting the agency to engage with the state law that we were citing. There was never a citation of any of the cases we cited. There was just a recitation of the statute. We never got anything beyond the recitation of the statute as to why this is a crime involving moral turpitude. So how will you have us articulate what the right approach is here? In cases, even in the context of obstruction and false statements, take a variety of approaches how they articulate why that particular statute constitutes a crime of moral turpitude. And we sent out a notice to you last week identifying a handful of cases that had addressed false statement obstruction types of statutes with other circuits, each of which articulates it somewhat differently. What approach, what test are you advocating that we adopt if you can persuade us that we should hold as a matter of law this is not a crime of moral turpitude? I think the right approach is an approach that's always been taken in these crimes against government that there must be some aggravating factor beyond mere interference with an official's duties. I think that case is going back to 1930. Is that an intent to deceive? Is that simply a specific intent as opposed to general intent? Again, the other circuits have taken some different approaches here. How would you suggest we go about defining what that aggravating factor is in the context of an obstruction statute? And I think with those three cases that were cited, all of those embodied conduct that would fall or comparable conduct that would fall under the statute, I think those decisions were issued in recognition that to find otherwise, we're essentially reading the involving moral turpitude language out of the statute, and it's becoming just a crime. A crime is sufficient. When you began, and it made sense to me, you divided the conduct at issue from the intent or state of mind required. In other words, I think your position would be that a court, a reasonable court, should have no difficulty deciding what conduct could potentially rise to moral turpitude. The jaywalking doesn't. The government function might. What you say is that the real definition has to go to intent. The intent required, would it, as Judge Krauss said, be a specific intent with a corrupt purpose, as we say in some of the statutes? Malice, would that be part of it? Would recklessness suffice? I think there's been the combination of, well, sometimes recklessness has been found to suffice by the BIA, and it's this combination of the two factors. So I'm going to use that example. If I intentionally jaywalk and I purposefully do that, that does not make that a crime involving moral turpitude. And so I think it's that two-pronged analysis, and that perhaps here the agency was blinded just by the mens rea aspect, but the BIA itself has found that a state of mind standing alone doesn't answer the question. It has to be the conduct plus a state of mind, conduct that is reprehensible. And I'd also – You saved for yourself five minutes, so we'll have you back on rebuttal. One thing I would note, Your Honors, Mr. Lilley-Flint was released last week. I just want to – or a few weeks ago. That's important to know. Thank you for bringing that up. Ms. Phillips? May it please the Court, Rebecca Hoffberg Phillips, on behalf of the United States Attorney General. I was actually going to make sure the Court knew that as well. We did confirm his release on bond, so that issue is no longer present. Good. Did you start with the standard of review? Yes, and we agree that the standard is de novo but informed by Chevron. What does that even mean? What does it mean to say you've got de novo review but you have to defer under Chevron? Is that like saying this is black but it's white? Well, Your Honor, because it's a legal issue, it's generally reviewed de novo, and so there is a legal issue here about whether a state offense qualifies under a federal immigration definition. However, that federal immigration definition is the epitome, the quintessential ambiguous term in the immigration code. Crime involving moral turpitude is a unique term of art that is particularly subject to deference to the agency. So we're not really free to review this de novo? We have to defer to the BIA? Is that what you're saying? Well, so in this case, we're not actually asking for the Chevron deference here. And, in fact, as you've mentioned, we're pointing out that there isn't the right kind of analysis here that you would be able to even give sort of Skidmore or some other type of deference to because it's sort of missing. So our standard of review is de novo? It's de novo in terms of the extent that this is a question of law, yes. Well, just stick with me. I mean, we're going to have to write a decision, right? Yes. So we're going to have to say how we're looking at this. Are you acknowledging, as your colleague has asserted, that this is a single-judge decision from the BIA, not entitled to any deference? It would be Skidmore deference at best, but even the government says it's not good analysis, so no deference, straight up de novo. Am I hearing you right? From the standpoint that we're not asking for the deference, we're asking for the agency to reconsider its decision. But you're asking us to review it, and I'm asking you, are you telling me de novo review with no deference? It's subject. I want to make clear. It's subject to the principles of Chevron deference if and when there is a board decision on point that's worthy of Chevron deference. So the issue of whether something is a crime involving moral turpitude is subject to Chevron deference as a general. But that's a different case. That's a great. I'm just asking about this decision that we've got before us on appeal. We're not asking the court to give Chevron deference to this or any deference. For any deference. You're saying de novo review straight up, right? Yes, and we're asking for the court to remand it so that we can have a board decision that could include. Now engage with Mr. Conklin's point that the board had their chance. They had their shot. Now we've got it in front of us. This is not some strange, difficult, you can't understand what's going on kind of a point. There's plenty of cases from other circuits. There's plenty of basis on which to say this is not a reprehensible act. So why shouldn't we just make a legal ruling? Well, so there's a few things. I think the court has already realized there's a lot of different approaches going on in the context of obstruction of justice types of crimes, and it isn't so black and white. One of the decisions that this court asked us to look at was Boveda, which actually points to an unpublished decision in this court, Debo, that stands for the proposition, according to Boveda, the idea that sometimes you don't need an intent to defraud. We've upheld CIMT decisions based on other conduct sufficient to support moral turpitude, and that is connected to an intent to obstruct justice based on an intention to obstruct justice. Now that case is Debo versus Attorney General. Now I understand in that case there were false statements that were being used to obstruct a government function. So there's this combination of was there the falsity that caused the obstruction, and it seems to me that if we had had a situation here where we knew that you had to use a false information or false identity, those kinds of things, if we knew that was the unlawful act that did obstruct the government function, most courts would agree that that is a CIMT. Well, hold on just a minute. We have to deal with something that's categorically, right? We're not here under a modified categorical approach, right? Ms. Phillips, this is a categorical approach. And you seem to acknowledge in your briefing, maybe I've read it wrong, but it looks like you're conceding error when you say things like, remand will allow the board to reconsider its prior determination that petitioner's conviction for obstructing a government function in violation of Section 5101 constitutes a crime involving moral turpitude in light of Pennsylvania state case law demonstrating minimum conduct prescribed by the statute falls outside the impair or obstruct government by deceit articulation. That looks like a concession of error by the BIA judge that decided this at the administrative level. Am I reading it correctly? We're not confessing error. What we're saying is that, as this court has pointed out, that the board did not grapple with or contend with the appropriate state case law that was showing the contours of this offense. And the state case law shows that somebody at their door in a wheelchair not letting somebody in to their house can be convicted under 5101, right? Yes. What that shows is that fraud is not necessary for this statute. No deceit? No. Right. That just standing up and saying to somebody in a courtroom, get your hands off my wife, that can be obstructing under 5101, right? No deceit, no anything like that? There's no deceit required. And so by analogizing this case to the fraud precedent, that's where we're saying the board did not contend with the full scope of the statute. But that's not the only way a crime can be seen. So why would we send it back? That's what I'm asking you. It's clear the board didn't do that. And, in fact, if the only board precedent is that there's an aggravating factor, can you point to anything in the BIA's decisions or in any court that says just any obstruction at all, peaceful demonstration, 1960s style, sit in at a lunch counter, that that's a reprehensible act, a crime involving moral turpitude. Do you have anything on that? Not in those specific words. I do want to point out a few things about that. And I started to mention a Davo case. Before you go further, if you're saying no, you don't have anything, then my question to you is why would we send it back? If it's clear, what's the purpose in sending this back and not just saying, hey, you got it wrong, this is categorically a statute where you can't say, oh, crime involving moral turpitude. Now, remand, go forward, do what you need to do. Why wouldn't we do that and just get the thing moving? Okay. First of all, I do have cases within this circuit's precedent that supports a broader idea of what it means to be a crime involving moral turpitude. And the Davo case that was cited in Bobadilla, if you look at that case, it in turn cites two published decisions in this court, namely SMRICO 387F3279, that says that moral turpitude contains an honesty component, which includes conduct that is contrary to justice, honesty, or morality. I'm sorry to interrupt. I mean, this is all very interesting, but why can't these arguments be addressed to us? Usually you'd remand because there's something to be known about the case that is not known. Is there something about the underlying conduct, again, accepting the psychotomy between conduct and state of mind that we don't know, that the board can develop further? If that's not the case, we can answer these legal questions, I think, perhaps even better than the board. The board has, as I mentioned before, is owed the deference when it comes to a term like crime involving moral turpitude, which, as you've stated, has sort of these conflicting components in terms of intent and conduct that the board can inform, that the board can weigh in on and bring. What are you thinking they're going to see? I'm struggling with this. You keep saying send it back because they might see something. What could you possibly be seeing in 5101 that the board might engage with and say, well, that makes that language in that Pennsylvania statute, one which you could say a violation of it is categorically crime involving moral turpitude. Identify for us what you think the board is going to see there. Well, I don't know what the board could or couldn't see. And if the board decides that this is not... Because there isn't anything, right? And that that's clear. We can look at it and we can say, if you can be charged with this crime and convicted of it for nothing more than a peaceful civil rights disobedience act, then how can it be a crime involving moral turpitude? That's the question you need to answer for us. You can't just say, well, you've really got to defer to the board because this is such a tough one. Nobody could get this except those guys. They're the ones with the real understanding. You've got to send it back to them. You've got to at least give us some reason to believe it's hard. Well, it is. First of all, if you look at the facts of these cases, you really do have to look at all the facts of these state cases. I know that the Petitioner's Council sort of just makes it seem like this was a peaceful protest, but there was a lot more going on in that case. We address this as a categorical matter. And in a host of cases, Hernandez-Cruz, John Luis, Mayorga, Partica, we have taken on ourselves ruling on crime of moral turpitude as a matter of law where it was clear that the statute in question could not be deemed as such. What are you giving us that even accepting then-Judge Alito's concurrence that it should be remanded where there is an alternative ruling that is at least debatable? How is it at least debatable that 5101 constitutes a crime of moral turpitude? Well, if you believe that an intentional interference with government function can amount, you know, that type of approach to intentionally interfering with government functions in a variety of ways and in ways that impair the ability to carry out the laws, to enforce the laws, there is obviously something unacceptable about people standing in the way in that regard. Yeah, it's a crime. Nobody's arguing it's not a crime, Ms. Phillips. The question is, is it a crime involving moral turpitude? They're not saying it's not a crime. Unless the government is prepared to stand up here and say every crime is a crime involving moral turpitude, how do you get to the debatable point that Judge Krause has asked you to point out for us? I just think that, as you mentioned, I don't know what the board would or wouldn't say. The board could easily say this is not a CIMT, but at least provide the right kind of approach to how do we look at CIMTs because to say something is more vile than crazy. Why do they need that chance? We're just going around in circles now. Why do they need that chance? What is it about this case and this question that means, you know, you really should think about you need to defer to the board here because there's a hard question here and they've got some expertise and you need to let them take a look at it. What can you point to in this statute that makes it debatable that as a categorical matter it involves a crime which is morally reprehensible? Well, in this court's De Leon decision, when this court pointed out to Black's law definition, noted that an honesty component is anything done contrary to justice, honesty, principle, or good morals. Honesty, right. That's if there were an honesty component, which there isn't. Well, I'm saying that it was a broad, anything contrary to good morals is very broad, and I understand this court's point that this is a broad statute, but having guidance on understanding the conduct and intent, even if this statute does not ultimately fall under that, the lack of guidance in that regard. There's a lot going on with obstruction of justice right now, both in the ADFL context and in the CIMT context. I think litigants greatly benefit from good board decisions that understand all this competing case law out there because you do have, for example, the Second Circuit just recognize that misapprehension of a felony is different under Ninth Circuit law versus Eleventh Circuit law in terms of concealing a crime. And when you're doing something like that, that's also under the obstruction idea, and I think that the lack of clarity. I don't think anybody's going to question you or push back at you, Ms. Phillips, on the idea that there may be hard cases where the board's views on whether something involves moral turpitude may or may not be helpful. That could be the case. I'm just trying to get you to engage with this statute. What's in this case why this statute is one that needs expertise from the board? Can you identify for us what in this case in this statute needs clarification from the board? Well, I think because you have the unlawful act is encompassing both the aggravating physical factors and the fraudulent factors and then this plus, right? So then you have these other cases that you're pointing to. And knowing the scope of the conduct that does or does not fall within, you know, we understand that this base file depraved has sort of two subsidiary definitions that the board has recognized or that the courts have recognized in terms of the violence, injury aspect, or the fraud aspect. And usually cases are falling under one of these as opposed to this general term of base file depraved because what does that mean? That's a lot less clear than these subsidiary definitions that the board has come up with and that have received that type of deference. Here's one of those subsidiary definitions under which 5101 could be categorically defined as a crime of moral turpitude. What I'm saying is that would be for the board. Identify. What is that subsidiary definition under which 5101 could be a crime involving moral turpitude? That's all I'm asking you. Point to it. It would be for the board to consider how obstruction of justice falls into the relationship between impairing government function and obstruction of justice. Okay. If I could just point out one more thing. Actually, I would really, really like to get an answer to this question. You've just said send it back because other than involving reprehensible acts, there are these subsidiary definitions under which something might be a crime involving moral turpitude. If you've got something in mind, I would like to hear it. What is the definition of a crime involving moral turpitude that you think would apply here and could make 5101 categorically a crime involving moral turpitude? Identify that for me, please. I mean, if you take a variety of factors, and I understand we're not looking at the facts of this case, although I will say I think that is partly what interfered in the analysis in this case. Wait, wait. We're talking categorical facts have nothing to do with it. I'm asking you for a legal definition of a crime involving moral turpitude. You have posited that the board might find under some definition of a crime involving moral turpitude that 5101 is such a crime. I'm asking you to share that definition with us. What is it you've got in mind? Your Honor, I don't have something specific in mind. What I have in mind is that because it's so ambiguous and so in need of clarification, that the board could very well articulate better what are the limits and where does obstruction of justice, what types of obstruction of justice crimes do or do not fall within this CIMT framework, and if there is a third subsidiary that deals with CIMTs, how do we look at those? Because of these conflicting decisions, as this court has pointed out, and Boveda, Flores, Molina, and Blanco, you can see that there is a lot out there right now, and that is where the government, and even if the board eventually says this is not a CIMT, to engage with why it's not and the problems with the statute, if that is the case, because it is such an ambiguous term and because obstruction of justice on its face kind of sounds very morally turpitudinous, and in this particular case there were all fraud offenses initially charged to this area. Yes, but we're not talking about this case, right? We're not talking about the facts here. Right. I just think it infected how you look at this. When you see nothing but fraud, health insurance fraud, he admits on his cancellation of removal application, I used this other guy's name, he had used his name and social security number for health care, it's screaming fraud, and fraud was what was used here, and the government agrees that this is not a fraud CIMT, and so that is really where we're coming from in terms of the deference there. I got you. That's gross. To this point, every decision that's dealing with a statute involving obstruction or false statement related to obstruction from the BIA and from our sister circuits has required an aggravating factor, and an aggravating factor involving some intent to deceive, a specific intent that involves deception or theft of property. Can you point us to any case from the BIA or any court that has even come close to dispensing with that aggravating factor requirement and adopting this third subsidiary approach that you're suggesting that doesn't require an aggravating factor for obstruction of justice to be deemed a crime of moral servitude? What I'm saying is maybe the board thinks there is a factor, there is not an existing third subsidiary. What is the government arguing for? The government would like for everything to go back. What is the government arguing for as to why the obstruction statute that we're dealing with should be deemed a crime of moral servitude? Is it that it has an aggravating factor, or is it simply that despite the absence of any case law supporting the absence of an aggravating factor, that the government on remand is intending to argue that no aggravating factor should be required for obstruction to be deemed a crime of moral servitude? What is the government's position? Well, the government doesn't have yet a position in terms of what would be, I mean, that would be for DHS to argue to the board on the remand, but what we would, what the government would be doing is making sure that the board fully grapples with the extent of the scope of this statute and does or does not have, can you, you know, crime involving moral servitude is not about different elements, right? It's not like other federal immigration offenses where you're matching up elements that way. It's sort of like the totality of the circumstances of a crime or the situation that you're looking at, and you're seeing does that sort of amount to something that we consider abhorrent in society that way. You don't disagree that these arguments, petitioner's arguments were raised before the BIA. The government had the opportunity to make whatever arguments it might make in response, and instead the government filed a motion for summary affirmance arguing that the IJ reached the correct decision, and it was so clear that it didn't even require written opinion by the BIA. Why should the government or BIA revisit this issue that both parties had an opportunity to address to the BIA previously? So the immigration judge's written decision was made before petitioner's counsel actually presented all of the state case law material. If you look at it, it was an interesting sequence of events, which is what I wanted to get to, which is what I think sort of led to the inability to see what was really going on here. The written decision is dated April 25th, okay? At the hearing... I'm referring to the arguments raised before the BIA and the government's motion for summary affirmance before the BIA. I understand, Your Honor. I think what happened is that you have an immigration judge's decision that was a little bit sort of going for the rubber stamping, but it was created before a lot of the arguments took place, and I think what may have happened is that there was sort of this potential reliance on it that it was sort of maybe easy to rely on it because it had been this written decision that was created, but then the arguments came after it. And if you look at it, there was an amendment to the MTA that was lodged with the crime-involving moral turpitude, and that came later. And so what happened is you had some evaluations made before the immigration judge was even informed by opposing counsel of all these considerations in state case law. And I think when you couple that with this idea that you have this cancellation, the board acknowledges in its decision, well, he filed this cancellation of removal application, and right in that application, do you go by any other name? And he lists the name of the guy whose information he allegedly stole and used. But what you're saying is that the board and the immigration judge blew it, and they should just get another chance, because darn it, we could probably say something helpful. Is that when you boil it right down and you're confessing they messed up, they were wrong, but if you just give them another chance, this time they'll engage and they'll get it right. Is that it? Well, Your Honor, they didn't fully grapple with the statute to that extent, and you could send it back for all requirements. You can direct the board. Petitioner's counsel is worried he won't get the chance, so maybe we'll be back here and they mess it up again. But if this court directs the board to address everything, you know that they're going to evaluate it all, and he won't risk losing his opportunity to show the other evidentiary requirements of cancellation of removal. You can allay that concern and simply direct the board to address every component of cancellation of removal. You're not prepared to commit to us that the government's position on remand would be that this statute is not a crime of moral turpitude. We don't have even that, much less any suggestion of what the BIA itself will do or whether the Attorney General is going to withdraw this from the BIA. We don't even have the government saying that it's going to take a different position than it did the last time this was before the BIA. Well, I think as the court pointed out, the government didn't really take a position before. The government sort of tried to rubber stamp what was done, again, without grappling with what was really at stake because of the sequencing of the events here, I think is what happened. But I've never seen an immigration judge decision come out before the hearings are over, and that's what happened here. And so you have this really... Well, they really, really messed up, so they should have another chance. Your Honor, our position is that there were circumstances that, you know, kind of caused the situation of being unable or not fully considering everything, and because... I think we've got your position. Do you have anything else? Okay. Okay. Thanks, Ms. Phillips. Thank you, Your Honor. We'll hear from Mr. Conklin on the bottle. Thank you, Your Honors. Just a couple of clarifications. We walked into his very first removal hearing last April with the same exact case law we're relying on here today. The judge had that at the time he made his decision, and we turned a brief in at the very first hearing with all of his cases. Another thing I'd like to clarify is there's no guarantee we would get that hearing at the BIA. The agency frequently does not provide evidentiary hearings if they think you're ineligible as a matter of law. And I know that recently in a case called Chang-Cruz v. Attorney General, the case was remanded for a specific purpose, and the BIA did not do what the government said it would do on remand. There is a disconnect between what the agency is doing below and what's being argued here. Another thing I'd point out is I'm glad there's recognition that no decision throughout this year or more has ever been cited to support the conclusion that this is a CINT, and the case just mentioned Daigo is no exception. The crime was knowing false statements on ATF forms in an attempt to procure firearms, and in doing so obstructed an important government function. So there were other aggravating factors in that case. I know one thing Daigo said in that case, an important government function. And that goes back to Flores and in other cases, distinguishing them by saying important government function, recognizing that it can't just be any government function. They're reading important out of the statute. And I'm not saying government is not important, but there's degrees that have been recognized. You know, interfering with traffic being a lesser culpable rise degree of interference than procuring falsely firearms. So Daigo doesn't change the outcome there. Can I ask you to go back to the Lopez Mesa case, which although not articulated in argument seemed to figure prominently in the government's brief as the standard that might conceivably apply here. In that case, that combination of the two circumstances was deemed sufficient by the BIA to make the aggravated driving law intoxicated on the crime of moral turpitude. Here, 5101 involves not only the intent to obstruct, but it provides how that's done. And we're most concerned with, of course, the last phrase, the catch-all, which is by any other unlawful act. In other words, while that is certainly more general than force, violence, physical interference, it also requires that the act itself, the means by which the obstruction is conducted, be unlawful. Why doesn't that create a parallel if we were to accept or defer to the Lopez Mesa approach to some combination of two factors, an intent to obstruct plus doing it through an act that is itself unlawful? Why wouldn't that meet the Lopez Mesa standard? Well, in kind of similar analyses, the BIA has said that then the underlying act itself must be a CINP. So, for example, any unlawful act is jaywalking. Any unlawful act is filling out incorrectly a form. I mean, it encompasses virtually any act under the statute, and not just crimes. One thing I also wanted to point out was that this is an obstruction of justice. This is broader than obstruction of justice. In the same way, deceit, honesty, fraud, these keep being brought up, those are not elements of this particular crime. And I say that because it seems like the attention keeps getting strayed to other factors besides the language of the statute. Now, regarding remand, I think that remand would only be appropriate if the court thinks that the BIA should be allowed to have this case sent back and say all of the case law on this issue, all of the circuit case law, all of our prior case law is wrong, and now impeding any government function is a CINP. And I don't think they should have that opportunity. If that's what they're given, then essentially there's no judicial review of BIA decisions, in addition to the fact that then the words involving moral turpitude have no meaning, are rendered meaningless under the law. And I'd also, regarding unlawful, any unlawful act, now, he was not convicted, and that phrase has been given more attention in the other parts of the statute, but he wasn't convicted under any unlawful act. And I think those are means rather than elements, the way they're listed out in the jury instructions. But what we have here is just a generic conviction under Section 501. All right. Thank you, Mr. Conklin. Thank you, guys. Appreciate the arguments from both sides. We take the matter under advisement. Call our next case.